FILED
 2008 Jan-18 AM 09:19
U.S. DISTRICT COURT
    N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **SAMMY EDWARD SIMPSON, II,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **Civil Action No. CV-06-S-962-M** |
| ) | |
| **CROSSVILLE HEALTH CARE** ) | |
| **AND REHABILITATION,** ) | |
| **L.L.C.,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

This is a suit in which plaintiff, Sammy Edwards Simpson II, alleges that his former employer, Crossville Health Care and Rehabilitation, L.L.C., terminated his employment because of plaintiff's disability, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*. Plaintiff also claims that, while employed by defendant, he was required to work "off the clock," so that defendant could avoid paying him overtime, in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. The action now is before the court upon defendant's motion for summary judgment (doc. no. 22).

Federal Rule of Civil Procedure 56(c) provides, in part, that summary judgment not only is proper, but that it "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.
>
> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)); *see also United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (*en banc*).

## I.  SUMMARY OF UNDISPUTED FACTS

Sammy Edward Simpson II was employed by Crossville Health Care and Rehabilitation L.L.C. as "Social Services Director" for approximately four and a half

months, from on or about January 19, 2005, through May 30th of the same year.[1]

Plaintiff was interviewed for his position by defendant's Administrator, Gail Painter, and Renee Croft, defendant's Director of Admissions and Quality of Life Coordinator, and eventually hired by Painter. During the entire period of plaintiff's employment with defendant, he was a probationary employee and, therefore, not subject to the disciplinary procedures contained in defendant's Employee Handbook.[2]

The position of "Social Services Director" had a written job description that detailed the essential duties of the job. In essence, however, plaintiff was expected to interact with residents of the health care and rehabilitation facility and their family members on a regular basis — a duty that demanded the possession (and daily exercise) of good interpersonal skills, and the ability to work well and courteously with others.[3]

During plaintiff's brief tenure with defendant, Painter and Croft received complaints from residents, their family members, and plaintiff's co-workers regarding plaintiff's behavior and job performance.[4] For example, on one occasion plaintiff

---

[1]*See* doc. no. 22 (defendants brief in support of summary judgment), Ex. 6 (defendant's responses to plaintiff's first series of interrogatories) ¶ 1, at 2-3.

[2]*See* doc. no. 22 (defendant's brief) ¶¶ 1-3, at 2-3, and doc. no. 24 (plaintiff's brief in opposition to summary judgment), ¶ 1-3, at 1 (all "admitted").

[3]*See* doc. no. 22 (defendant's brief) ¶¶ 4 and 5, at 3, and doc. no. 24 (plaintiff's brief), ¶ 4 and 5, at 1 (both "admitted").

[4]*See* doc. no. 22 (defendant's brief) ¶ 7, at 3, and doc. no. 24 (plaintiff's brief), ¶ 7, at 2 ("Admitted that this was Painter's and Croft's testimony," but not otherwise or elsewhere disputing

allowed a resident to move a large chest of drawers into his room in violation of defendant's policy. Plaintiff was counseled by Painter regarding this incident.[5]

A second incident involving plaintiff revolved around a scheduled room move for residents on May 27, 2005. The family of one of the residents called Renee Croft and requested that their move be rescheduled. Croft agreed and informed plaintiff that the move would be rescheduled for May 28, 2005. On May 27, 2005, however, plaintiff called a member of that resident's family and informed him that the resident would be moved in fifteen minutes. The family member asked plaintiff if they could have forty-five minutes to travel to defendant's facility before the resident was moved, but plaintiff remained adamant that some family member must arrive at the facility within fifteen minutes. The family members traveled to the facility as quickly as they could, but did not see plaintiff when they arrived. Croft saw the family in the hall and asked why they were there. The family explained the situation and were informed by Croft that it was fine for them to move the next day.[6]

Yet another incident involving plaintiff concerned the transfer of a patient placed in defendant's facility by the Alabama Department of Human Resources

---

the assertions).

[5] *See* doc. no. 22 (defendant's brief), Ex. 1 (plaintiff's deposition) at 52-53.

[6] *See* doc. no. 22 (defendant's brief) at 22-23; *id.*, Ex. 1 (plaintiff's deposition) at 56-65; *id.*, Ex. 2 (Painter deposition) at 87-90; *id.*, Ex. 10 (Rogers Affidavit).

("DHR") to another health care facility located in another county. Painter instructed plaintiff to contact the DHR representative, to ensure that the transfer process was handled correctly. When the day for the transfer arrived, however, plaintiff was unable to provide Painter meaningful information about how to correctly handle the patient's discharge and transfer. As a result, Painter asked Croft to follow-up with the DHR representative.[7] After these incidents and continuing issues of poor performance, Painter decided to terminate plaintiff's employment.[8]

## II. DISCUSSION

### A. Disability Discrimination

Plaintiff alleges that he suffers from Attention Deficit Hyperactivity Disorder ("ADHD") and psychosis, that defendant knew of his disability and the fact he was taking medication for it, and that he was terminated because of his disability.[9]

Under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*.

---

[7]*See* doc. no. 22 (defendant's brief) at 23; *id*., Ex. 2 (Painter deposition) at 89-93; *id*. Ex. 1 (plaintiff's deposition) at 65-70.

[8]Defendant catalogued eleven incidents that allegedly occurred during plaintiff's brief tenure with the health care facility and motivated the decision to terminate his employment. *See* doc. no. 22, Ex. 6 (defendant's responses to plaintiff's first series of interrogatories) ¶¶ 2(a)–(k), at 3-9; *see also id*. ¶ 3, at 9 ("Plaintiff was terminated for his failure to listen to and follow instructions and as a result of the amount of complaints from residents, family members, and other staff members received, as detailed in response to [interrogatory number] 2 above, and the lack of improvement after numerous meetings with Administrator [Gail Painter] and Quality of Life Coordinator [Renee Croft].").

[9]*See* doc. no. 15 (amended complaint), at 2-5.

("ADA"), plaintiff must prove that his employer intentionally discriminated against him because of his disability. "In the absence of direct evidence of discrimination, a plaintiff may establish a prima facie case of an ADA violation through circumstantial evidence using the familiar burden-shifting analysis employed in Title VII employment discrimination cases." *Wascura v. City of South Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001); *see also, e.g., Hilburn v. Murata Electronics North America, Inc.*, 181 F.3d 1220, 1226 (11th Cir. 1999) ("The familiar burden-shifting analysis of Title VII employment discrimination actions is equally applicable to ADA claims.") (citing *Moses v. American Nonwovens, Inc.*, 97 F.3d 446, 447 (11th Cir. 1996)); *DeLuca v. Winer Industries, Inc.*, 53 F.3d 793, 797 (7th Cir. 1995) (collecting cases).

To establish a *prima facie* case of disability discrimination on the basis of circumstantial proofs, a plaintiff must produce evidence showing that: (1) he has a "disability" within the meaning of the ADA; (2) he nevertheless is "a qualified individual with a disability," meaning that he can perform the essential functions of the employment position he held prior to termination, with or without reasonable accommodations for his disability being made by the employer;[10] (3) he suffered an

---

[10]*See* 42 U.S.C. § 12111(8) (defining "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires"); *see also* 29 C.F.R. § 1630.2(m) ("Qualified individual with a disability means an individual with a disability who satisfies

adverse employment action; and (4) a causal linkage between the plaintiff's disability and the adverse employment action complained of — *i.e.*, plaintiff was terminated *because of* his disability.[11]  *See, e.g.*, *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001); *Reed v. Heil Co.*, 206 F.3d 1055, 1061 (11th Cir. 2000); *Davis v. Florida Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000); *LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998); *Doe v. Dekalb County School District*, 145 F.3d 1441, 1445, 1454 (11th Cir. 1998); *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997) (citing *Morisky v. Broward County*, 80 F.3d 445, 447 (11th Cir. 1996)).[12]  If a plaintiff

---

the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires, and who, with or without reasonable accommodation, can perform the essential functions of such position").

[11] There actually is a fifth element, implicit in the interstice between the third and fourth: *i.e.*, "a plaintiff must demonstrate that the employer had either actual or constructive knowledge of the disability or considered the employee to be disabled." *Gordon v. E.L. Hamm & Associates, Inc.*, 100 F.3d 907, 910 (11th Cir. 1996) (citing *Morisky v. Broward County*, 80 F.3d 445, 447 (11th Cir. 1996) (per curiam)).

[12] *See also, e.g., Pritchard v. Southern Company Services*, 92 F.3d 1130, 1132 (11th Cir.) ("In order to establish a prima facie case under the Americans with Disabilities Act of 1990, . . . Pritchard must show that: 1) she has a disability, 2) she is a qualified individual, and 3) she was discriminated against because of the disability"), *amended on reh'g*, 102 F.3d 1118 (11th Cir. 1996), *cert. denied*, 520 U.S. 1274, 117 S. Ct. 2453, 138 L. Ed. 2d 211 (1997). Other courts of appeals have made similar findings. *See, e.g.*, *McKay v. Toyota Motor Manufacturing*, 110 F.3d 369 (6th Cir. 1997) ("A party seeking relief under the ADA for termination must establish (1) that she is a disabled person within the meaning of the Act, (2) that she is qualified to perform the essential functions of her job with or without reasonable accommodation, and (3) that she suffered an adverse employment decision because of her disability"); *Williams v. Channel Master Satellite Systems, Inc.*, 101 F.3d 346, 348 (4th Cir. 1996) ("To establish a cause of action under the ADA, a plaintiff must demonstrate: '(1) that he has a disability; (2) that he is otherwise qualified for the employment or benefit in question; and (3) that he was excluded from the employment or benefit due to discrimination solely on the basis of the disability'").

demonstrates all elements of a *prima facie* case, then the employer would be required to "'mak[e] reasonable accommodations to the known physical or mental limitations' of the individual to avoid entry of judgment against it. . . . The employer may avoid making reasonable accommodations by 'demonstrat[ing] that the accommodation would impose an undue hardship on the operation of the business of such covered entity.'" *Burch v. City of Nacogdoches*, 174 F.3d 615, 619 (5th Cir. 1999) (quoting 42 U.S.C. § 12112(b)(5)(A)[13]).

The ADA defines the concept of "disability" three ways — that is, as including any person: (A) who has a "physical or mental impairment" that "substantially limits" one or more of such person's "major life activities"; or (B) who has a "record" of such an impairment; or (C) who is "regarded" as having such an impairment. 42 U.S.C. § 12102(2); *see also* 29 C.F.R. § 1630.2(g). "An individual is deemed to be 'disabled' for purposes of the ADA if he satisfies any one of these three enumerated definitions." *Gordon v. E.L. Hamm & Associates, Inc.*, 100 F.3d 907, 911 (11th Cir. 1996).

---

[13]The "general rule" prescribed by the ADA is that: "No covered entity shall *discriminate* against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, or other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (emphasis supplied). The term "discriminate" is defined in the succeeding subsection (b) as including, among other things, "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A).

Defendant filed a motion for summary judgment arguing in the alternative that plaintiff is not a "qualified individual" under the ADA — that is, a person with a "disability" who can perform the essential functions of the job he held or sought, with or without reasonable accommodation being made by the employer — but that, in any event, defendant had a legitimate non-discriminatory reason for terminating plaintiff's employment. Defendant also argued that plaintiff does not suffer from a disability as defined by the ADA, and that it had no knowledge of plaintiff's alleged disability.

After plaintiff filed a response, to introduce facts indicating defendant did have knowledge of his condition, and asserting that he is substantially limited in the major life activity of learning, defendant re-directed the focus of its argument. Defendant asserts that "[t]he question [of] whether . . . Plaintiff is disabled is not the key issue in this case. The real issues are whether Plaintiff is a 'qualified individual' and whether [defendant] terminated Plaintiff's employment because of his alleged disability."[14]  Thus, the court will focus its attention on those arguments that defendant asserts in its reply brief are the "real issues."

### 1.   *A "qualified individual"*

Plaintiff would be a "qualified individual" if he could perform the essential functions of the Social Services Director position, with or without reasonable

---

[14]Doc. no. 27 (defendant's reply brief), at 5-6.

accommodation being made for his alleged disability by defendant. *See* 42 U.S.C. § 12111(8); *Earl v. Meyers*, 207 F.3d 1361, 1365 (11th Cir. 2000). Consideration is "given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8).

Defendant argues that plaintiff could not perform the essential functions of his position. Defendant continuously received complaints about plaintiff's abrupt and harsh attitude when dealing with residents and their family members.[15] According to defendant, having a caring attitude and good interpersonal skills are essential functions of the Social Director's position, and plaintiff did not possess these essential qualities and skills. Further, plaintiff was counseled more than once for his failure to follow procedure and complete his duties in accordance with procedure.[16]

Plaintiff merely disagrees with defendant's assessment of his abilities, or lack thereof, and confirms that he did not have to ask for any accommodation because he proclaims none was needed.[17] Plaintiff contends that defendant merely "had trouble

---

[15]*See* doc. no. 22 (defendant's brief), at 10 (citing Ex. 2 (Painter deposition) at 47 and 50-53 and Ex. 3 (Croft deposition) at 17 and 24).

[16]*See id*. at 10 n.22.

[17]*See* doc. no. 24 (plaintiff's brief) at 15.

with the manner in which he performed these duties."[18]  It is not enough for plaintiff to merely disagree, or to quarrel with defendant's contentions.  Plaintiff must come forward with evidence to at least raise a genuine fact dispute on the material question of whether he was a "qualified individual" with a disability.  The only evidence that plaintiff submits on this issue is the finding of an administrative hearing officer allowing him to receive unemployment compensation, and reversing an examiner's prior determination that plaintiff was discharged for misconduct.[19]  It bears mention that the administrative hearing officer noted that the only evidence submitted was the sworn and un-refuted testimony of the claimant (plaintiff); the employer (defendant) offered no evidence.[20]  Further, the issues involved in an administrative proceeding to determine eligibility for unemployment compensation are vastly differently from those involved in the instant action in which disability discrimination is claimed.

As plaintiff has failed to submit any evidence to raise a genuine issue of material fact regarding the question of whether he was a "qualified individual," the court must conclude that defendant's motion for summary judgment on the disability discrimination claim is due to be granted.[21]

---

[18]*Id.*

[19]*See* doc. no. 23 (plaintiff's evidentiary submission), Ex. 1.D.

[20]*See id.* at 2.

[21]Because defendant is entitled to summary judgment on the basis of its argument that plaintiff was not a "qualified individual" with a disability, the court need not address defendant's alternative argument presented in its reply brief that plaintiff was not terminated because of his

**B.    Fair Labor Standards Act Claim**

Plaintiff also alleges that, while employed by defendant, he was required to work "off the clock," and that he was not compensated for those hours, which would have included overtime hours.[22]  Defendant moved for summary judgment, arguing that plaintiff's position falls under an "administrative" exemption to the Fair Labor Standards Act of 1938 ("FLSA"), obviating the need to pay for time worked in excess of forty hours per week.

Under the FLSA, employees must be paid time and a half for any hours worked in excess of forty hours in one week.  *See* 29 U.S.C. § 207(a)(1).  However, the Act provides an exemption from the overtime pay requirement for persons "employed in a bona fide executive, administrative, or professional capacity."  29 U.S.C. § 213(a)(1).  The employer has the burden of showing that it is entitled to the exemption, and exemptions under the FLSA are to be narrowly construed against the employer.  *See Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995).

The "administrative" exemption applies to an employee:

> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . .;
>
> (2) Whose primary duty is the performance of office or non-

---

disability.  *See* doc. no. 27 (defendant's reply brief), at 7-8.

[22]*See* doc. no. 15 (amended complaint), at 3.

manual work directly related to the management or general business operations of the employer or the employer's customers; and

(3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200 (a).

The parties disagree with respect to virtually every material fact necessary to determine whether the administrative exemption applies. Plaintiff contends that he was hired and paid as an hourly employee.[23] He points to a "Pay Information and Change" form completed at the time he was hired, and signed by Administrator Gail Painter, that indicates he was an hourly employee paid at a rate of $13.00 an hour.[24] Plaintiff also points out that he received 2.25 hours of overtime pay for his first week of work.[25] Plaintiff was required to clock in and out every day, and if he worked past four o'clock, Croft instructed him to clock out and return to his work.[26] Plaintiff further contends that he was closely supervised by Gail Painter and Renee Croft, given daily instructions regarding patient needs, and was not allowed to make decisions without prior approval from Painter or Croft.[27]

Defendant maintains that plaintiff received a salary of $520 a week, and that

---

[23] *See* doc. no. 23 (plaintiff's evidentiary submission), Ex. 1, at 2.
[24] *See id.*, Ex. 2.
[25] *See* doc. no. 22 (defendant's brief), Ex. 5 (defendant's evidentiary submission).
[26] *See* doc. no. 24 (plaintiff's brief), at 9.
[27] *See* doc. no. 23 (plaintiff's evidentiary submission), Ex. 1, at 2.

he was incorrectly categorized as an hourly employee on his personnel documents.[28] Defendant attempts to explain the requirement of plaintiff to clock in and out as needed "for record keeping purposes,"[29] although it is unclear from the record the precise "record keeping purpose" that was served by such a requirement.

Defendant points to the job description for Social Services Director as including planning, directing, implementing, evaluating and supervising the social services programs and activities; implementing social service interventions that achieve treatment goals; addressing resident needs; linking social supports, physical care and physical environment to enhance quality of life; assisting in recruiting, hiring, counseling, disciplining, and terminating social services personnel; scheduling department work hours including vacation and holiday schedules, personnel, work assignments, etc. to expedite work; and delegating administrative authority, responsibility and accountability to other social services personnel as deemed necessary to perform assigned duties.[30] Plaintiff challenges this job description as pure fiction when compared to the reality of his day-to-day work assignments. This is a fact dispute that cannot be resolved on summary judgment. Accordingly, defendant's motion for summary judgment on plaintiff's Fair Labor Standards Act

---

[28]*See* doc. no. 22 (defendant's brief), Ex. 5.
[29]*Id.* at 28.
[30]*Id.* at 25-26 and Ex. 4 (Job Description).

14

claim is due to be denied.

### III. CONCLUSIONS AND ORDERS

For the foregoing reasons, defendant's motion for summary judgment is due to be GRANTED IN PART and DENIED IN PART:  It is granted with respect to plaintiff's disability discrimination claims, and those claims are dismissed with prejudice; on the other hand, the motion is denied with respect to plaintiff's claims under the Fair Labor Standards Act.

This court is of the opinion that plaintiff's remaining claim could be resolved by mediation.  Therefore, it is ORDERED that the parties select a mediator on or before February 1, 2008, and proceed to mediation in accordance with this court's Alternative Dispute Resolution Plan.  Should the parties fail to agree upon a mediator within the time set forth herein, the court will select a mediator from its panel of neutrals.  The parties are directed to inform the court of the name, address, and telephone number of the mediator, as well as the date for mediation. Communication with the court regarding any aspect of the mediation ordered shall be directed to Mrs. Lisa Waters, Clerk's Office, United States Courthouse, 101 Holmes Avenue, Huntsville, Alabama 35801; telephone (256) 551-2511.

DONE this 18th day of January, 2008.

                                                                                          _____
                                                                                           United States District Judge